| 3 | 483 |
|---|---|
| 163 | 642 |

## Lothrop *v.* Blake.

A. B. and C. formed a partnership in 1830, under the firm of B. & Co. In 1833, B. went out of the firm, but continued to hold his interest in the real and personal property thereof. In 1836, changes in those having an interest in partnership property having taken place, and B. having *then* sold out his whole interest to A., A. gave to B. a bond of indemnity to save him harmless from all loss or responsibility on account of the partnership of B. & Co., or any modification therein by change of parties, &c. In 1838, one M. recovered a judgment against B. and another, as members of a firm of A. & Co. B. having paid this judgment, brought suit against A. on the bond of indemnity, alleging, that A. & Co. was a modification of B. & Co. *Held*, (1st) that B., to support this action, must prove, *first*, the payment, or at least recovery of the judgment against A. & Co.; *second*, that he was a member of the firm of A. & Co., of which the judgment is *primâ facie* evidence, but not conclusive; *third*, that A. & Co., was a modification of B. & Co. (2d) A. never having been a party to the suit against A. & Co., the writ not having been served on him, and having no notice thereof, may controvert the record of that suit, to show that B. was not a partner of A. & Co., and that there was a good defence known to B. of which he could, and ought to have availed himself. (3d) If B. suffered judgment to go against him either through ignorance, carelessness, or design, he cannot visit the loss on A., who only promised to indemnify him from responsibility arising from the firm of which he had been a member. (4th) The expression in the bond of indemnity of 1836, " that the said B. has now sold out his whole interest to A," is not irreconcilable with proof, that B. ceased to be a member of the firm, or that the firm ceased to exist, in 1834.

A record of a suit in Ohio, attested by the deputy clerk of the proper court—a law of that state enabling such deputies to perform the duties of their principals—and certified by a judge of that court, of which it appeared by the record that another member

was the chief justice, was neither attested, nor certified as required by the act of Congress of 1790, and on both grounds was improperly admitted in evidence.

A court is not prohibited from receiving a record, although not certified according to the act of Congress, if proved as a foreign record.

A receipt endorsed upon a record is part of it, and, as such, proper evidence.

ERROR to the District Court of Allegheny county.

*Sept.* 15. This was an action of debt brought by Henry Blake, the defendant in error, who was the plaintiff below, against Sylvanus Lothrop, the plaintiff in error, upon a bond of indemnity executed by the said Sylvanus Lothrop in the penalty of twenty thousand dollars, and dated July 4, 1836, with condition thereunder written as follows :

" The condition of the above obligation is such, that, whereas by an article of agreement bearing date the 10th day of May, 1830, Sylvanus Lothrop, Henry Blake, and James Anderson, formed a copartnership for certain purposes, therein mentioned, under the style of H. Blake & Co., and whereas since that time sales have been made, whereby those having an interest in the partnership property have changed, and said Blake has now sold out his whole interest to Sylvanus Lothrop :

" Now then, if the said Sylvanus Lothrop, or either of them, shall, well and truly save harmless the said Henry Blake from all loss or responsibility of every kind or description, which may come or fall to him from the copartnership aforesaid, or any modifications therein by change of parties, and from the payment of all debts for which he may in any wise be liable in consequence of said copartnership, and shall from time to time well and truly pay and satisfy unto the said Blake, all such sums of money as he shall be compelled to pay in consequence of any liability arising out of the copartnership aforesaid, then the above obligation to be null and void, otherwise to be and remain in full force and virtue."

The plaintiff, after setting forth in his declaration the condition aforesaid, and averring generally, that he had been damnified by the non-performance thereof, for further breach of the said writing obligatory alleged:

" That on the 3d day of August, 1838, in the Circuit Court of Greenup county, Kentucky, one Samuel Millirons recovered a judgment against the said Henry Blake and Alden Lothrop, as members of the firm of Lothrop & Co., which said firm was comprised of Alden Lothrop, Sylvanus Lothrop, Henry Blake and William Stewart, and was a modification of the firm of Blake & Co., for the sum of $375 damages and costs of suit. And that afterwards, to wit, on the 10th day of Nov. 1841, in Court of Common Pleas of Lawrence

county, Ohio, the said Millirons sued out a summons in debt against the said Henry Blake and Alden Lothrop on the judgment aforesaid, which said summons was returned served as to the said Blake, and as to the said Alden Lothrop " not found," and that afterwards, to wit, at April Term, 1843, the said last-mentioned court rendered judgment against the said Blake, for the sum of $265 48 debt and $82 05 damages, and also costs: that the said Blake afterwards appealed from the said judgment to the Supreme Court of Ohio, whereupon a judgment was rendered against him, and that on the 17th day of May, 1844, he paid to the plaintiff therein the amount thereof, and hath not received the same or any part thereof from the said Sylvanus, by reason whereof he hath forfeited," &c.

The defendant pleaded "*non est factum*," "*non damnificatus*," and for further plea,

" That the said plaintiff ought not to have or maintain his said action, because he says that if the said plaintiff has been damnified by reason or means of any matter, cause, or thing, in the said condition, &c., or in the said declaration mentioned, he the said plaintiff hath been so damnified of his own wrong, and by and through his own means and default."

It appeared that Henry Blake, the plaintiff, Sylvanus Lothrop, the defendant, and one James Anderson, were owners of certain ironworks in Kentucky, and had been carrying them on in partnership as early as 1830. That some time after, in 1833, other persons purchased into the concern from Anderson and Lothrop, and carried on the works, without, *as among themselves*, treating Blake as a partner, although he had not *then* sold out his interest. After 1833, the name of the *firm* was changed to Lothrop & Co., and the ironworks were carried on by Alden Lothrop, brother of the defendant, for the company, consisting of Sylvanus Lothrop, the defendant, his brother, Alden Lothrop, one William Stewart, and one Addison Stockton, who became a member of the firm in 1835. It appeared by the papers in evidence, that the plaintiff, up to the 4th of July, 1836, when he sold out his interest to the defendant, continued to hold his interest in the real and personal property of the concern. On the 4th of July, 1836, when he sold out his interest to the defendant, the bond of indemnity, the condition of which is set forth in the declaration made part of this statement, was given by the defendant to the plaintiff.

On the trial of the cause, the plaintiff offered in evidence a paper purporting to be a copy of the record of a suit brought on the 25th day of May, 1835, in the Circuit Court of Greenup county, Kentucky, by a

2 s 2

certain Samuel Millirons, against Alden Lothrop, Sylvanus Lothrop, Henry Blake and William C. Stewart, as copartners, trading under the firm of Lothrop & Co., upon an account commencing on the 3d day of February, 1834, and extending to January 13, 1835, showing a return of a service on Henry Blake and Alden Lothrop, and *non est inventus* as to Sylvanus Lothrop and William Stewart, with a judgment rendered therein in favour of the plaintiff and against the parties served on the 3d day of April, 1838, for the sum of $375, of which the sum of $168 15 was afterwards remitted.

The said paper was authenticated by the attestation, under the seal of the said court, of William Coram, then claiming to be the clerk thereof, dated on the 2d day of February, A. D. 1842, with the following certificate from the presiding judge:

*Commonwealth of Kentucky, Greenup Circuit, ss:*

I, WALKER REID, Presiding Judge of the Greenup Circuit Court, certify that William Coram is clerk of the same, and that his attestation is in due form of law.   Given under my hand and seal, April 7th, 1843.                                        WALKER REID, [L. S.]

The defendant's counsel objected to the admission of the said paper, on the ground that it was not authenticated according to act of Congress, and no certificate that William Coram was, at the time of making certificate, clerk of the said court.

"*Per Curiam.*—We are not prohibited from receiving a record, unless certified according to act of Congress.   The exception is hypercritical and overruled.   This was defendant's *first* bill of exception."

The plaintiff afterwards offered in evidence a paper purporting to be a copy of the records of proceedings in the Supreme Court of Ohio, for the county of Lawrence, before the Honourable Ebenezer C. Lane, Chief Judge, and Nathaniel C. Reed, judge of the said court, in an action of debt brought upon the above recited judgment, by the said Samuel Millirons against Henry Blake and *Alden* Lothrop, with a return of service upon the said Blake and *non est inventus* as to the said Lothrop, and a judgment thereon against the said Blake at April Term, 1843, of that court, for the sum of $265 48, with damages and costs.

The said last-mentioned paper embraced, amongst other matters, the following entries:

Receipts.—"May 2, 1843, received and receipted to defendants for $3 00 on account of fees."   "April 17, 1844, received of

Henry Blake, the balance of the above costs, for which, after deducting $3 00 of clerk's fees, heretofore paid and receipted for, $10 41, and gave a receipt.                               Jos. WHEELER, *Clerk.*"

"Received of the defendant, Henry Blake, the full amount of the above judgment, debt $265 84; damages, $96 70; interest to the present time, $3 62; in all, $366 16.

"$366 16.   *May* 17, 1844.                    L. M. BROWNRIG,
                                                *Att'y for plaintiff.*"

Then followed the attestation of the clerk under the seal of the said court, in the words following, to wit:

"*State of Ohio, Lawrence county, ss.*

"I, Joseph Wheeler, clerk of the Supreme Court of the state of Ohio, for Lawrence county, do hereby certify, that the foregoing six pages contain a true transcript of the proceedings in the case wherein Samuel Millirons, for the use of John Culver, is plaintiff, and Henry Blake, impleaded with Alden Lothrop, is defendant; and also, an accurate copy of the receipts upon the cost bill.  In testimony whereof, I have hereunto set my name, and affixed the seal of said court at Burlington, this 31st day of May, A. D. 1844.

                                    Jos. WHEELER, *Clerk.*
                              -    by J. F. WHEELER, *Dept.*"

And annexed to this, the following certificate:

"I, N. C. Read, judge of the Supreme Court of the state of Ohio, do hereby certify, that Thos. Wheeler is clerk of said court, within and for the county of Lawrence, and that his attestation upon *said,* is in due form of law, and that to all acts by him so done, full faith and credit are and ought to be given in judicature and thereout.
        (Signed)                              N. C. READ."

Defendant's counsel objected to the admission of the foregoing paper, because,

1st.  The certificate is not by clerk of court, but by deputy.

2d.  The certificate of judge not by presiding judge.

3d.  That it is more than the whole record or less, that receipts are not evidence.

The court overruled the objections.   -

This was defendant's *second* bill of exception.

The plaintiff then gave in evidence a deed of conveyance bearing even date with the bond sued on in this case, from himself to the defendant, reciting the formation, in 1830, of the partnership between the plaintiff and defendant, and a certain James Anderson, the pur-

chase by them of certain lands in Kentucky, the dissolution of the said copartnership, the purchase by the defendant of the interest of the plaintiff therein, and the execution of a bond "indemnifying him against all the debts and responsibilities which have or shall be incurred by the copartnership aforesaid," and conveying to the said defendant all his undivided " interest in the said lands, together with furnaces, forges, and other buildings thereon ; and also all his interest in all the personal property which may belong to the said firm, composed of Lothrop, Blake and Anderson, and either of them, and others who may have acquired an interest in the said firm or its property by purchase."

It was admitted that the firm of Lothrop & Co. succeeded that of Blake & Co., and that Caroline Furnace was part of the property conveyed in the above indenture.

Defendant's counsel called Joseph A. Stockton as a witness, and proposed to prove by him, that Henry Blake, the plaintiff in this suit, was not .at any time a member of the firm of Lothrop & Co. ; that the fact was notorious throughout the neighbourhood ; that the witness was acquainted with the affairs of the concern, and was authorized to settle the claims against it, and that no such claim was ever presented or intimated.

Plaintiff objected that the evidence was to contradict the bond.

" *Per Curiam.*—You may show that the company were not liable to pay the debt of Millirons, and that Blake suffered the judgment to go against him by collusion or neglect, when he had a sufficient defence ; but not to commence by contradicting the facts which are stated in your written deed and agreement under seal, unless you propose to show, that defendant was induced to sign the same by fraud or misrepresentation of the plaintiff, or some mistake of the scrivener in drawing the deeds."

The witness then testified as follows :

"I was a partner of Lothrop & Co. in 1835, and attended to the winding up of their business of the previous year, 1834. In 1836, I went down to Kentucky and paid the debts of the concern, as far as I heard of them. I had the books. I knew Millirons. I saw him at that time. He was one of the hands about the furnace. He preferred no claim against Lothrop & Co. to me. It was generally known that I was there to settle. I paid out a great deal of money. Saw Millirons frequently. He said nothing to me about his claim. Alden Lothrop sold out, in the fall of 1835, his interest in the Caroline Furnace, and went to Oakland Furnace in the same county. He gave no attention to the business of Lothrop & Co. at that time."

· Defendant proposed to prove by the witness, that Blake was not a member of the firm of Lothrop & Co. and therefore was not liable for the demand made in that suit, if he had chosen to make a defence.

Objected to by plaintiff's counsel, and objection overruled. This was plaintiff's first bill of exception.

The witness then proceeded:

" Mr. Blake went out of the firm in July, 1833. On the 1st of January, 1834, Alden Lothrop and William Stewart bought in and took part of the concern. The firm at the rolling mill was called ' S. Lothrop ;' at the furnace, ' Lothrop & Co.' In January, 1835, I purchased one-fourth from Sylvanus Lothrop, William Stewart, and Alden Lothrop."

[Witness here exhibited the articles of copartnership between Sylvanus Lothrop, Alden Lothrop, and William Stewart, as partners under the firm of Lothrop & Co., dated in January, 1834, and organizing the said firm, but containing no reference to or mention of the name of the plaintiff, Blake.]

Witness then proceeded:

" From July, 1833, till January, 1834, Alden Lothrop conducted the business in the name of Sylvanus Lothrop & Co. Alden, however, had then no interest in the real estate. He got one-third of the profits. Blake left Kentucky in the fall of 1833, and went to Portsmouth, Ohio, where he became a manager for Gaylord & Co."

It was proved or admitted on the trial of the cause, that Anderson sold out to the defendant, and ceased to have any connection with the firm of Blake & Co., antecedent to the month of July, 1833.

Defendant excepted to charge.

The jury rendered a verdict in favour of the plaintiff; whereupon this writ of error was sued out, and the plaintiff in error assigned the following as error in the proceedings of the court below:

" 1. That the court erred in admitting the evidence referred to in the first bill of exceptions.

" 2. In admitting the evidence referred to in the second bill of exceptions.

" 3. In assuming in their charge, without and against evidence, that the firm of Lothrop & Co. had ejected the plaintiff out of the concern, without his assent.

" 4. In charging that it was the calculation of the parties that Blake, the plaintiff, might be held responsible by the public for the debts contracted by the iron-works, under whatever modification the

*name* of the firm conducting them may have undergone, and that the firm of Lothrop & Co. was such a modification of the firm of Blake & Co. as was contemplated in the bond.

"5. In instructing jury that it did not follow that because Stewart & Stockton, when they entered into the concern, and together with the Lothrops carried on the works in part owned by Blake, that he (Blake) might not be held liable as a partner by the public for the debts contracted by their iron-works, or that Blake himself was ever willing to admit that he was not entitled to a share of the profits, if any had been made by the works; and thereby affirming, in substance, that if Blake had become liable by his own default, it was no defence in this action.

"6. In charging the jury that 'the' *mere* fact that the members of the newly modified firm of Lothrop & Co. did not choose to consider Blake as a partner between themselves, and as entitled to a share of the profits, (without any evidence that Blake had sold out his interest in the works, and did not claim a share of the profits, and was thus liable to the public,) is not, to say the least of it, conclusive proof that Blake was not liable, &c., and in thus affirming, in substance, that there was no other evidence of a withdrawal on the part of Blake, and that it was an essential part of the plaintiff's case, under the pleadings, to show that Blake did not claim a share of the profits, and thus render himself liable."

*Williams*, for plaintiff in error.—The record and judicial proceedings, &c., shall be proved or admitted, &c., by the attestation of the clerk and the seal of the court annexed, if there be a seal; together with a certificate of the judge, chief justice, or presiding magistrate, as the case may be, that the said attestation is in due form. Act of 26th May, 1790 It must appear from the judge's certificate, that at the time of certifying, he is the presiding judge of that court. A certificate that he is the judge who presided at the trial, or that he is the senior judge of the courts of law in the particular state, has been deemed insufficient. 1 Greenl. 506; Stephenson *v.* Bannister, 3 Bibb, 369; Kirkland *v.* Smith, 2 Martin, N. S. 497. Must be the clerk himself; certificate of under clerk incompetent. 1 Greenl. 506; 4 Bibb, 409. So certificate of late clerk not sufficient. 1 Overton, 328; Conklin's Prac. 256 ; 1 Paine & Duer, 480, 481. An office copy of a record is a copy authenticated by a person authorized for that purpose. 1 Greenl. 507. On strict principles of evidence, the laws and public documents of one state can be proved in another only as foreign laws. 1 Greenl. 489 ; 4 Conn. Rep. 517, 521.

Every country recognises the seals of its own tribunals, because of such notoriety as to carry intrinsic evidence of verity; *aliter* as to foreign courts. 3 Johns. 314. They should be proved as other matters of fact. 9 Mod. 66; 3 East, 221, 227; 7 Johns. 519; 6 Wend. 484; 5 Cranch, 335. We proved that Blake had left the state in 1833. The court were therefore wrong in insisting that he was, in construction of law, still a partner, and that we had ejected him. Bond to be construed according to recital. The court were in error, in considering that it was intended to provide against all the debts of the works. It was a change of partners in the firm, not a new firm under a different name.

Our bond was intended merely to provide for legal liabilities. We pleaded, that if he had suffered, it was in his own wrong; but this the court said was not a good defence. We proved that Blake was not a partner. The ownership of the works would not give him a share of the profits, if he were not a partner. There was no evidence that Blake was turned out, or left against his own will. It is clear that Blake was not liable, and had good defence. But he gave us no notice. We disproved the debt, as far as we could prove a negative. Is he therefore entitled to recover? It was not such a liability as was provided for in the bond. He proved nothing to show that he was liable. We stipulated merely for a legal liability. He should have called upon us to defend our own suit. He cited Case *v.* Cushman, 3 Serg. & Rawle, 544.

*McCandless*, contrà.—The judge who ruled the case below, very correctly remarked, that the objection to the admission of the record from Kentucky was hypercritical, and overruled it. The act of Congress requires no such certificate as is contended for. It is not necessary that he should be a presiding judge. In Baker *v.* Field, 2 Yeates, 532, the record of a court of Georgia, not having a seal, nor certified according to the act of Congress, of 26th May, 1790, was received as *primâ facie*, but not conclusive evidence.

The act of Congress prescribing the manner of authenticating records, does not exclude all other modes of proof. Voris *v.* Smith et al., 12 Serg. & Rawle, 334; Kean *v.* Rice, 12 Serg. & Rawle, 208.

He here referred to statutes of Ohio, ed. 1841, page 285, for the purpose of showing, that under the second and fifth sections of the act of 17th February, 1831, a deputy, after giving bond to his principal and taking an oath, may do and perform any and all of the duties of the principal. The copy of the records of the Supreme Court of the state of Ohio were therefore properly certified. The

firm of Lothrop & Co. is but a modification of that of Blake & Co. Anterior to 1836, Blake never parted with his interest in the firm property; and if by any private arrangement Blake was excluded from a participation in the profits, creditors cannot be affected thereby. The public knew nothing of the ownership of the property, or of the private arrangements of the parties. The claim of Millirons was fair and honest, and the record shows it. Nothing collusive or fraudulent in or about it. Blake, when he sold to Lothrop, intended to protect himself against all debts of the firm.

*Sept.* 21. ROGERS, J.—This is an action of debt on a bond of indemnity, dated the 4th July, 1836, given by the defendant to the plaintiff, in the sum of $20,000, with the following condition underwritten.

The condition of the above obligation is such, that whereas by an article of agreement, bearing date the 10th day of May, 1830, Sylvanus Lothrop, Henry Blake, and James Anderson, formed a copartnership for certain purposes therein mentioned, under the style of H. Blake & Co. ; and whereas, since that time, sales have been made, whereby those having an interest in the partnership property have changed, and said Blake has now sold out his whole interest to Sylvanus Lothrop :

Now, then, if the said Sylvanus Lothrop shall well and truly save harmless the said Henry Blake from all loss or responsibility of every kind or description, which may come or fall to him from the copartnership aforesaid, or any modifications thereof by change of parties, and from the payment of all debts for which he may in any wise be liable, in consequence of said copartnership, and shall from time to time well and truly pay and satisfy unto the said Blake, all such sums of money as he shall be compelled to pay in consequence of any liability arising out of the copartnership aforesaid, then the above obligation to be null and void, otherwise to be and remain in full force and virtue.

The plaintiff, after setting out in his declaration the condition of the bond, and averring generally, that he was damnified by the nonperformance thereof; for further breach, alleges, that on the 3d day of August, 1838, in the Circuit Court, Greenup county, Kentucky, one Samuel Millirons recorded a judgment against the said Henry Blake, and Alden Lothrop, as members of the firm of Lothrop & Co., that said firm was composed of Alden Lothrop, Sylvanus Lothrop, Henry Blake, and William Stewart, and was a modification of the firm of Blake & Co.

He further avers that, afterwards, he paid said judgment to the said plaintiff, and that he hath not received re-payment of the same, nor any part thereof, wherefore the bond on which suit is brought becomes forfeited.

In support of the action, it is indispensable for the plaintiff to prove the payment, or, at least, the recovery of a judgment against Lothrop & Co.; and that he, Blake, was a member of said firm; and next, that said firm was a modification of the copartnership of H. Blake & Co. This is necessary, because Lothrop only agrees to indemnify Blake from losses which may arise from the copartnership, or any modification or change of parties in the same, and not from any responsibility which may accrue from any distinct and independent firm, even although he may be a member of that firm; and next, because having averred this to be the true construction of the contract, he is bound to prove it. The *allegata* and *probata* must agree. Now, how does the case stand on the evidence? The plaintiff gave in evidence a suit, by one Samuel Millirons against Alden Lothrop, Sylvanus Lothrop, Henry Blake, and William C. Stewart, copartners, trading under the name and firm of Lothrop & Co.; a judgment rendered thereon against Alden Lothrop, and Henry Blake, the writ having been served on them only, and *n. e. i.* as to Sylvanus Lothrop, and William C. Stewart; a suit in the state of Ohio, on the judgment rendered against Blake, and endorsing that the money so recorded was paid or satisfied by him. The plaintiff, as before remarked, avers that Blake was a member of the firm of Lothrop & Co., which averment he is bound to prove. Of this, the judgment against Blake and Lothrop is *primâ facie*, but not conclusive evidence, and the testimony on the part of the defendant shows to a demonstration, that he, Blake, never was a member of that firm; and that if the objection had been taken, it would have been a conclusive bar to the recovery. Sylvanus Lothrop not being a party to the suit, the writ not having been served on him, and having no notice thereof, is at liberty to contradict the record in this particular, and to show that there was a good defence known to the plaintiff, of which he could, and ought to have availed himself. That the loss, if any, is the result of his own folly, if not, as is charged, proceeding from collusion with Millirons.

But the fundamental error of the court lies in assuming that the firm of Lothrop & Co. is a modification of the firm of H. Blake & Co. Lothrop agrees to indemnify Blake against all losses or responsibilities of every kind or description which may come or fall to him (this, in substance, is the language of the agreement) from the copartnership of H. Blake & Co., or any modification by change of parties

2 T

therein.    The plaintiff avers that Blake was a member of the firm of Lothrop & Co., and that the latter firm was a modification of the former firm.    The inquiry therefore is, has the plaintiff sustained his declaration, or brought himself within the meaning of the agreement?    That he has failed in the first particular has been already shown.    It is equally clear, he has not sustained the last.    Setting aside the improbability that one firm, consisting of different individuals, with a different name, is a modification of a former firm, the evidence leaves no room for doubt on this point.    In addition to the evidence of Joseph A. Stockton, who proves that Blake was not a member of the firm of Lothrop & Co.; that it was a new and distinct firm; that he went out of the firm in July, 1833, the articles of agreement were given in evidence; and by this it appears, that in January, 1834, a new firm was formed under the name of Lothrop & Co., consisting of Sylvanus Lothrop, Alden Lothrop, William Stewart.    The debt due Millirons was against the latter and not against the former firm.    In the suit, either through ignorance (which we cannot suppose) or design, he includes, contrary to the fact, Blake as a partner, and recovers judgment against him as such, through connivance, as the defendant charges.    If Blake suffered judgment to go against him, either through ignorance, carelessness, or design, he has himself only to blame for it.    He cannot be permitted to visit the loss on Lothrop, who only promises to indemnify him from responsibilities arising from a firm of which he was a member.    To suppose he intended to guarantee him against any other firm, would be unreasonable, and is in fact contrary to the construction put upon the contract by the plaintiff himself, in setting out his cause of action.    Inasmuch, therefore, as it appears that Blake was not a member of the firm of Lothrop & Co.; that this firm was not a modification of the firm of H. Blake & Co., but a distinct and independent firm, with which Blake had no connection; the plaintiff has no cause of action, and the court ought so to instruct the jury.    And if it had affirmatively appeared, that Millirons had a good cause of action against Blake, in consequence of their having failed or neglected to give notice of the dissolution of the partnership of H. Blake & Co., which we do not concede; yet, whatever remedy he may have against the firm of Lothrop & Co., he has no cause of action on the bond of indemnity.    And this is manifest from this consideration.    It would be unjust, that Lothrop should be compelled to pay a debt out of his own funds, which, if a debt at all, was not against him alone, but a firm of which he was but one of the members.    In construing the agreement, the court proceed on the erroneous supposition, that the article contains incontrovertible

evidence, that Blake continued a member of the firm, until the 4th July, 1836, the date of the bond of indemnity. But the expression relied on, that Blake had now sold out his whole interest to Sylvanus Lothrop, is not irreconcilable with proof, that he ceased to be a member of the firm, or that the firm ceased to exist in January, 1834. For, although that firm was dissolved, he had an interest in the assets, whether real or personal, and was liable for the debts; and to this the language of the parties obviously refers. Being in part the owner of the real estate does not constitute him a member of the new firm, nor of itself continue him a member of the old firm. Nor does it entitle him to participate in the profits, or render him liable for the losses; nor does it subject him to a suit at the instance of those who may have dealt with the new firm.

Next, as to the authentication of the records from the states of Ohio and Kentucky.

We agree with the court, that the objection contained in the first bill is hypercritical; but not so as to the second bill.

By the Constitution of the United States, Congress have the power to prescribe the manner in which the public acts, records, and judicial proceedings in the several states shall be proved in any other state; and by an act of 1790, Congress has declared that the records and judicial proceedings of any state, shall be proved or admitted in any other court of the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, as the case may be; that the said attestation is in due form.

It cannot be admitted, (as is justly said in Stephenson *v.* Bannister, 3 Bibb, 370,) that under this act any judge of any court may certify a record. It must be *the judge,* if there be but one, or if there be more, then by the chief justice, or presiding judge or magistrate of the court from whence the record comes; and he must possess that character at the time he gives the certificate. A certificate that he is the judge that presided at the time of trial, or that he is the senior judge of the courts of law in the state, is deemed insufficient. The clerk also, who certifies the record, must be the clerk himself, or his successor: the certificate of his under clerk, in his absence, or of the clerk of any other tribunal, office, or body, is held incompetent for the purpose. See Sampson *v.* Overton, Bibb, 409; and Greenleaf's Ev., sec. 506, and the authorities there cited. Nor will the statute of Ohio, which enables deputies to perform the duties of the principal, make the authentication of the record, by him, evidence; as this would enable the several states to alter and control an act of

Congress. It must be construed by itself, independent of legislative enactments. This record is attested by the deputy, and is certified by N. C. Reed, judge of the Supreme Court of Ohio, but by the record it appears, that he is a member of the court of which the Honourable Ebenezer C. Lane is the chief justice. The record, therefore, is not certified as is directed by the act of Congress, and was on both grounds improperly admitted. It is very true, as is said, that the court is not prohibited from receiving a record, although not certified according to the act of Congress. If proved as a foreign record, it may be and ought to be admitted.

We agree, that if the record had been properly authenticated, the receipt endorsed would be part of it, and, as such, proper evidence. It is, as the court say, the practice in this state, and I suppose in others, to put receipts for the payment or satisfaction of judgments on the appearance and execution dockets. Had there been an entry of satisfaction it would be evidence, and an entry on the record is equivalent to an entry of satisfaction.

Judgment reversed, and a *venire de novo* awarded.