## CHARLES LAKE AND OTHERS vs. FRANK L. THOMAS.

*Principal and Surety—Guaranty of Faithful Performance of Duty by an Agent—Liability of Sureties—Changing Time of Settlement—Retaining Agent in Employment After Knowledge of His Defalcation—Notice to Surety of Defalcation of Agent—Pleading—Amended Pleas.*

A bond conditioned for the faithful performance of duty by an agent in paying over money collected by him, &c., provided that the agent should pay over the money upon the first call or demand of the principal. In an action against the sureties on the bond by the creditor a plea averred that the plaintiff changed the time and manner of settlement provided in the bond. *Held*, that this plea was bad because, according to the terms of the bond, this matter was left to the discretion of the plaintiff, and also because the plea does not allege that the change was made before defalcation by the agent.

While a surety is discharged if the contract is materially changed without his consent, yet an agreement between the creditor and the principal obligor, which is not a binding contract, to extend the time of payment or change the original contract does not operate to discharge the surety. The mere indulgence by the creditor in collecting a debt due him does not discharge the surety of the debtor.

In an action on the above-mentioned bond another plea set forth that the plaintiff had knowledge of the defalcations of the agent shortly after the occurrence thereof, but kept the agent in his employment and permitted the defalcations to continue. Upon demurrer to the plea, *Held*, that the demurrer was properly sustained, because even assuming that the defendants were not liable for defalcations committed by the agent after knowledge by the plaintiff of his prior defalcations, yet the fact that he was retained in his employment would not discharge the sureties from liability for such prior defalcation.

The failure of the creditor in a bond of indemnity to give voluntary information to the surety of the default of the principal does not discharge the surety.

In the absence of inquiries from a surety, the creditor is not bound to communicate to him all the circumstances that may affect the undertaking. In such case, to render the general allegation of concealment sufficient in the pleading, it is necessary also to aver that the creditor either procured the surety's signature or was present when the instrument was executed and then misrepresented or concealed essential facts which should have been disclosed; otherwise the allegation of fraud is only the pleader's deduction.

When a plea undertakes to answer the whole declaration, but in fact answers but a part, it is bad upon demurrer.

Where under leave to amend new pleas are filed bearing the same numbers as former pleas, those first filed will be considered as withdrawn.

Appeal from the Circuit Court for Wicomico County. The bond sued on in this case was as follows:

"Whereas, Frank L. Thomas has employed the above-bound John E. Sard to act for him in his stead and as his agent, in selling and leasing New Home sewing machines, and other sewing machines, in the discretion of said Thomas; and in collecting the moneys that may arise from such sales or become due under said leases, made and taken by said agent, and in collecting the moneys due upon sales and leases made by former agents of said Thomas, if he shall

place the contracts or leases under which said moneys are due in the hands of the above-bound agent, and for the discharge of any and all duties connected with said business ; and,

" Whereas, the above-bound John E. Sard hath agreed, and by these presents doth agree with the said Thomas, that he will use reasonable and proper diligence in disposing of such sewing machines as may be furnished to him by said Thomas ; that whenever he takes a lease for a machine he will see that said lease is duly signed and witnessed ; and that when a married woman signs a lease, her husband shall sign the same likewise ; that he will sell said sewing machines on the terms and conditions prescribed by the said Thomas ; in all respects observing and following the terms and conditions so prescribed ; that in all cases where said agent leases a machine, and any instalment or payment remains due and unpaid under the said lease and such default continues for twenty days, the said agent will take possession of said machine unless said Thomas shall, in writing, authorize him to do otherwise, and that in case he, the said agent, shall fail to observe this stipulation, his liability under this bond shall be for the amounts that have accrued and become payable before he removes said machine under said lease ; that he will collect with ·reasonable diligence all moneys placed in his hands for collection ; that upon the first call or demand of the said Thomas after he has received or collected any money for the use or benefit or belonging to said Thomas, he will make a return thereof and pay the same over to him or his order ; that he will take good and proper care of all machines or other property placed in his charge by the said Thomas, and that he will deliver to the said principal all such machines or other property as soon as may be reasonably convenient after request or demand is made therefor ; that from time to time he will return to said Thomas, at his request, a statement of all the transactions connected with said agency, and at the close of his relations, as agent, he will make out and

deliver to said Thomas a duplicate copy of all the books, papers and accounts which he may have kept connected with his work, and that he will deliver up and hand over to said Thomas, upon his call or request, any leases or other vouchers showing indebtedness to said Thomas, held by the said agent, whether such leases or vouchers have been taken by said agent or have been received by said Thomas by him.

" Now the condition of this obligation is such that the same shall be void if the above-bound John E. Sard shall well and truly do and perform all his duties connected with said agency, and shall well and faithfully fulfill and perform all his agreements and undertakings in the premises, but otherwise to remain in full force and virtue in law."

The case was tried below before the Court without a jury and the Court found for the plaintiff, assessing the damages at $500.

The cause was argued before McSherry, C. J., Bryan, Briscoe, Roberts and Boyd, JJ.

*Fred. H. Fletcher* (with whom was *John R. Pattison* on the brief), for the appellants.

The Court below refused to see any difference in a suretyship for the payment of a certain sum of money, and in continuing suretyship for the honesty of an agent or servant. In suretyships of the first class the fact that debtor is dishonest is not a fact that must be communicated to the surety by the creditor. The contract is not taken to guard against the dishonesty of the debtor, but to secure the payment of a certain sum of money, and which payment the surety is as much bound to make to the creditor as the principal debtor—there is a fixed and definite liability from the beginning. In a case like the present, however, the appellees were under no liability at the beginning, and it was not certain that they ever would be. Therefore, cases of suretyship, for the payment of a certain

sum of money, or the performance of a certain act, can have no application to continuing contracts for honesty. If the appellee abandoned the contract or made any variation in its terms the appellants will be released. The question does not turn upon the amount of difference made, but whether the contract performed was the original contract. *First Nat. Bank of Baltimore* v. *Gerke*, 68 Md. 456; *George* v. *Andrews*, 60 Md. 34; *Sasscer* v. *Young*, 6 G. & J. 247. The contract could have been altered by parol. *Herzog* v. *Sawyer*, 61 Md. 352; *Franklin Ins. Co.* v. *Hamill*, 5 Md. 180.

Are the appellees sureties or guarantors? No two words have ever been more often used as synonymous than these, and as an examination of the authorities cited will show. However, the bond in this case was a guarantee bond, and the appellants were sureties on it, and their contract was a guaranty of the honesty and fidelity of Sard. It, therefore, appears that, being promissors on a guaranty, they were guarantors. An examination of the bond shows that it was really a double contract. First, there was the contract of the sureties; then followed the contract between Thomas and Sard, in which the sureties were not mentioned; after this came the defeasance clause, which provided that, if Sard performed his contract, the contract of the appellants should be null and void.

It cannot be construed from this contract that the appellants were original promissors and debtors from the beginning. They promised to perform no part of the contract between Sard and Thomas. The bond recites that these two had previously made a contract of agency, and gives its terms; but this contract was merely between the two and was to be executed solely by Sard. The appellants never promised to perform the duties of the agency, and it is not claimed that they did. Their engagement was one of indemnity against the possible dishonesty and infidelity of Sard in the performance of that contract. It was collateral and subsequent thereto, and by every authority the

appellants were guarantors. *Brandt on Suretyship*, 1; *De Colyar on the Law of Guarantees*, 1.

If the appellants had the rights of guarantors they were entitled to reasonable notice of the defalcations and dishonesty of Sard, as set out in the fourth plea, and are not even responsible for that part of the appellee's claim before his knowledge of the unworthiness of Sard, on account of his failure to give reasonable notice to the appellants. *Roberts et al.* v. *Woven Wire Mattress Co.*, 46 Md. 386. In continuing contracts for the honesty of another in a place of trust there is hardly an appreciable difference in the law applicable to guarantors and sureties.

The following similarities are to be observed: 1st. A master, who in the course of his employment discovers the dishonesty of his servant or agent, cannot remain silent, still retain him in his employment and continue to trust him, and yet hold the guarantor or surety liable for any subsequent dishonesty. 2d. A master cannot require a servant or agent whom he knows to have been dishonest while in his employment to give either guarantors or sureties for his future honesty and accept the same without acquainting them with the prior dishonesty. 3d. The connivance of the master with the servant to defraud the surety or guarantor will exonerate the bond.

1. The rulings of the Court below on the pleadings relating to the fifth plea will be considered under this head. As the contract of the surety or guarantor is a continuing one, so the responsibility upon the master of disclosing his servant's dishonesty is a continuing one. If there is any reason of disclosing the dishonesty of the servant at the beginning of the suretyship, the same reason remains of disclosing the servant's dishonesty, when, in the course of his employment, his employer becomes aware of it. The object of the security is to secure the employer against the possible dishonesty of a servant that is supposed to be honest; but if the master discovers that he is dishonest, he has been fully protected, the object of the bond has been fulfilled and

further liability under the bond should cease. The fifth ·
plea divides the time during which the service lasted, and
during which the loss was sustained, into two periods. First,
from October 2, 1891, when the contract was made, to the
29th day of April, 1892, when Thomas became aware of
Sard's dishonesty. Second, from the last-mentioned date to
the termination of the agency. This plea makes no defense
against liability for the defalcations of the first period, but
does make defence against liability for the defalcations of the
second period. It also clearly charges dishonesty on the
part of Sard, ignorance thereof on the part of the appellants,
and knowledge and failure to notify the appellants on the part
of Thomas. The appellee's demurrer to this plea was sus-
tained, but in opposition to authorities. "The authorities are
conclusive that the sureties cannot be held bound for any fail-
ure of duty by Ryan occurring after the discovery in April,
because the appellant failed to communicate the knowledge
he had acquired to the sureties." *Com. Mutual Ins. Co.* v.
*Scott*, 81 Ky. 540. "Such conduct of the master would be
a clear violation of the rule which obligates him to do no
act which would injure or impair the liability of the sure-
ties." The *Atlantic and Pac. Tel. Co.* v. *Barnes*, 64 N. Y.
385. "When the employer of a clerk or agent takes from
another a bond of indemnity or other instrument guaran-
teeing the honesty and fidelity of such clerk or agent while
in the service of the employer, the latter impliedly stipu-
lates that he will not knowingly retain such clerk or agent
in his service after a breach of the guaranty justifying his
discharge, and that in the event he does so without the sure-
ties' consent, it is at the employer's own risk." *Estate of
Rapp* v. *The Phœnix Ins. Co.*, 113 Ill. 390. See *McKeckie*
v. *Ward*, 58 N. Y. 544; *Roberts* v. *Donovan et al.*, 70 Cal.
108; *Franklin Bank* v. *Cooper*, 39 Me.; *Brandt on Surety-
ship*, 424; 1 *Story's Eq. Jur.* 324; *Phillips* v. *Foxall*, 7 Q.
B. 666; *Smith* v. *Bank of Scotland*, 2 Ves. 540; *Railton on
Mathews*, 10 Cl. & F. 944; *Rogers* v. *Eve*, L. R. 13 Eq.
450; *Sanderson* v. *Ashton*, L. R. 8 Ex. 73; *Addison* v.
*Contracts*, vol. 2, 667.

It is insisted that the authorities are not in accord on this point, and that some assert a different doctrine.    However, an examination of them will show that they are not in conflict, and that the cases relied upon to establish a different doctrine do not apply to the case before us, which is one between individuals only.    These cases hold, first, that the failure of one officer of a corporation to discharge his duty does not release the sureties of another delinquent officer; second, that even connivance of one officer at the dishonesty of another officer will not release the sureties of the latter; third, that in no case will the sureties be discharged unless the acts complained of amount to dishonesty.    Says the Judge in one of these cases, referring to the cases which we have already cited:  "We have no occasion to discuss the cases further than to say that they have no application to the case before us, because it is not contended that the agent, Dix, for whom the defendants were bound, was guilty of any defalcation or other dishonest conduct." *Watertown Fire Ins. Co.* v. *Simmons*, 131 Mass. 85.    The Court also intimates that its decision would have been different if there had been palpable dishonesty in the agent, and if individuals only had been concerned.    " Were the rule different, by a conspiracy between the officers of a bank or other monied institution, all the sureties might be discharged."  *The Pittsburg, Fort Wayne & C. R. R. Co.* v. *Shæffer*, 59 Penn. 357; *McShane* v. *Howard Bank*, 73 Md. 156.    The new fifth plea was stricken out on the motion of the appellee, on the ground that it was the same as the fourth plea.

The fourth plea was a defence only to that part of the claim prior to the discovery on the 29th day of April, 1892, by Thomas, of Sard's dishonesty, on the ground that the appellee gave no reasonable notice thereof to the appellants. The amended fifth plea, on the other hand, was a defence to that part of the claim subsequent to April 29th, 1892. And, too, the fourth plea could in no event avail the appellants unless they had the rights of guarantors.  A mere

glance at the two pleas discloses their complete dissimilarity, which is too evident for serious argument. The ruling of the Court upon the motion striking out the plea is properly before this Court. " Questions on the pleadings arise upon the record, the rulings thereon do not come within the Statute of Westminster, and ought not to be incorporated in a bill of exceptions; such a practice is irregular." *Kunkel* v. *Spooner*, 9 Md. 468; *Wilson* v. *Merryman et al.*, 48 Md. 338; *Newcomer* v. *Keedy*, 9 Gill, 269; *Poe's Pleading and Prac.*, vol. 2, sec. 312; 19 Md. 293. The failure of Thomas to discharge Sard on the discovery of his dishonesty put an end to the suretyship and finally limited the liability of the sureties. "That the surety was discharged, because by continuing J. S. in her service after knowledge of the misconduct, the plaintiff had deprived herself of the right of terminating the service, a right which the surety was entitled in equity to have exercised for his protection." *Phillips* v. *Foxall*, 666; *Brandt on Suretyship*, 423. He condoned the dishonesty of his agent, and, if he suffered by continuing to trust him, he must himself bear the loss.

The rulings of the Court on the pleadings relating to appellant's sixth plea will be considered under this head. If Thomas did not know who Sard's bondsmen were to be before the bond was executed and delivered to him, he had no right to accept it without making a communication to the appellee of his knowledge of Sard's prior dishonesty while in his employment. It is to be so little expected that an employer will retain one in a place of trust whom he knows to be dishonest, that an application for security under such circumstances amounted to a holding him forth to the appellants as a person of trust, and was a fraud upon them. *Frowfelter* v. *State*, 66 Md. 85; *Howe Machine Co.* v. *Farrington*, 82 N. Y. 125; *Smith* v. *Josselyn*, 40 Ohio, 410; *Dinsmore* v. *Tidball*, 34 Ohio, 418; *Wayne* v. *Com. Nat. Bank*, 52 Penn. 349; *Svoy* v. *State*, 10 Vr. 135 (N. J.); *Smith* v. *Bank' of Scotland*, 1 Dow. 292; 1 *Story's*

*Eq. Jur.*, 324 ; *Brandt on Suretyship*, 423, 424 ; *Corp. Adgala* v. *McElroy*, 9 Ont. 580.

The fact that Thomas retained Sard in his employment, and that the bond recited the employment of Sard by Thomas, amounted to representations that as far as Thomas knew Sard was honest and trustworthy. Upon these representations the appellants had a right to rely, and, if Thomas knew of the prior dishonesty of Sard at the time he accepted the bond and did not disclose the same to the appellants, such non-disclosure was undue concealment and exonerated the bond. " But the holding him out as a person entitled to confidence by continuing him in his service, was equivalent to a declaration that the principal had no knowledge of the dishonesty of the agent." *Dinsmore* v. *Tidball*, 34 Ohio, 418. " The mere non-disclosure of circumstances affecting the situation of the parties material for the surety to be acquainted with, and within the knowledge of the person obtaining a surety bond, is undue concealment, though not wilful or intentional, or with a view to any advantage to himself." *Wayne* v. *Com. Nat. Bank*, 52 Penna. 349. " A person taking a bond for the future good conduct of an agent already in his employment, must communicate to a surety his knowledge of the past criminal misconduct of such agent, in order to make such bond good. The mere non-disclosure of such knowledge is a fraud in law, which will invalidate the obligation." *Svoy* v. *State*, 10 Vr., 135.

The appellee's replication to the sixth plea must be taken as confessing that Sard had, previous to the bond, been dishonest while in the appellee's employment, and that he knew of such dishonesty at the time he accepted the bond. Therefore, for the reasons above stated, the replication to this plea was bad. This replication was also bad because it did not begin with the words " For replication on equitable grounds," or words to like effect. *Code*, Art. 75, sec. 74. It was bad, too, because it was argumentative. *Code*, Art. 75, sec. 2.

The rulings of the Court relating to the eighth plea

will be considered under this head. This plea was a charge of connivance, which is a good defence. Yet, on the ground that it was the same as the fourth and fifth pleas, it was stricken out on the motion of the appellees. The fourth plea had already been ruled bad on demurrer, and which fourth plea was a defence only to that part of the claim prior to April 29th, 1892, and did not, however considered, furnish the appellants this defence. The fifth plea, which was a defence only to that part of the claim subsequent to April 29th, 1892, did not afford the appellants this defence, and, if for no other reason, beeause it was stricken out. Therefore, as the appellants did not have the benefit of this plea, this ruling was wrong. *Fraener* v. *Yingling*, 37 Md. 503. It is claimed that the ruling of the Court below on the demurrers to the original pleas, Nos. 3, 4 and 5, are not open to review in this Court, for the reason that these pleas were withdrawn by the motion and leave to amend. Such is not, however, the case. The motion as made and entered on the clerk's docket was to amend by filing new pleas, that is, additional pleas. Those already in were not withdrawn, and those thereafter filed are to be considered as entirely new pleas. The motion was not for leave to plead *de novo*, but to interpose additional pleas. *Gardiner* v. *Miles*, 5 Gill, 69 ; *Mitchell* v. *Sellman*, 5 Md. 385. The motion in arrest of judgment should have been granted, for the reason of material errors in striking out appellants' new pleas Nos. 5 and 8. *Schultze* v. *Fox*, 53 Md. 43 ; *Mitchell* v. *Williamson*, 9 Gill, 77. If the defendants were entitled to make the defences contained in these pleas the refusal to allow such pleas was an error of the Court and sufficient ground for an arrest of judgment. If it be held that the appellants were not entitled to demurrer to the appellee's replication to the sixth plea, and that such replication should not have been received, then that is a further ground for sustaining the motion in arrest.

*Sewell T. Milbourne* (with whom was *Alonzo L. Miles* on the brief), for the appellee.

The fourth plea sets forth that the moneys charged to have been collected by the said Sard, in the course of his employment, as the agent of the said Thomas, and not paid over to said Thomas by the said Sard, were, during the course of his employment, at divers times, fraudulently converted by the said Sard, intentionally and dishonestly to his own use, with the intention to steal and embezzle the same. That said Thomas had knowledge of the defalcations and embezzlements and of their true character, shortly after the occurrence thereof, but he kept the said Sard in his employment, and continued to trust him with the handling of large sums, and permitted the said defalcations and embezzlements to be repeated for a long time, and he did not notify the defendants thereof to their great loss, and although he had the opportunity to do so. The sum and substance of this plea is this: That Sard collected moneys belonging to the plaintiff and converted the same to his own use: That Thomas learned of said facts soon after they occurred, but did not give notice thereof to the said sureties, but continued to employ him and to allow him to handle large sums of money, and permitted him to continue said defalcations. We cannot see how harsh or severe words, or even imprecatory or damnatory epithets can affect the character of a charge, the real and true meaning whereof is well understood. This bond does not stipulate for settlements, or payments at regular periods. It simply requires the agent, upon his employer's call, or demand, to make settlements, for the moneys collected, and to pay the same over to him or his order. Even if under the law, the employer were bound to give notice to the sureties, whenever the agent made default, in the payment of the moneys collected by him, there would be no reason or obligation for him to give such notice, until the agent had made default, not simply, in omitting to pay over certain moneys collected, but until he had made default, in the sense of the bond.

But the fourth, fifth and eighth pleas are bad, for want of definiteness and certainty. These pleas set forth that Sard,

at divers times, embezzled all the moneys charged in the declaration to have been collected and not paid over—(that is—all the moneys which we seek to recover in this action), that Thomas obtained knowledge of such embezzlements, soon after they occurred, but instead of giving notice thereof to the sureties, he kept Sard in his service, and continued to trust him with large sums of money, and so enabled him to commit new embezzlements. If, after Sard had embezzled all the moneys, which we seek to recover, Thomas, without giving the sureties notice thereof, afterwards entrusted his agents with large sums of moneys, &c., it is perfectly certain that the moneys subsequently entrusted to Sard, were moneys with which we have no concern in this action. They were moneys which Thomas entrusted to Sard, after all the moneys charged in the declaration to have been collected and not paid over, had been embezzled. The pleas possibly were meant to set forth, that, of the moneys charged in the declaration to have been collected and not paid over by Sard, *certain sums* were embezzled by him, and that knowledge of the embezzlement thereof was obtained by said Thomas soon after the same occurred, but that he gave no notice thereof to the sureties, and afterwards entrusted said Sard *with other of the moneys charged in the declaration* to have been collected and not paid over, and permitted said embezzlements to be repeated, &c. But while we may surmise what is meant, the pleas give us no proper idea as to the same. If the defence set up is a valid one, it cannot, in the nature of things, apply to the whole amount, which the plaintiff claims to recover. The amounts which Sard had collected when his first defalcation was discovered, Thomas has certainly a right to recover, as well as any previous amounts collected by Sard, without the principal's knowledge. The plea ought to have alleged that certain defalcations were committed, of which the principal obtained knowledge, and that after such defalcations occurred and such knowledge was obtained, that no notice was given to the sureties, and that new defalcations were thereafter committed.

But the fourth plea is bad, because under the law an employer or principal is not bound to give notice to the sureties on his agent's bond that such agent has collected moneys and not paid the same over, although he may have knowledge of his failure to make such payment. This bond clearly shows the true character of the transactions upon which these defendants seek to be discharged from their obligation, and the use of hard words and epithets will not give to said transaction, in so far as the plaintiff is concerned, any other character than that which the bond indicates. Under the bond, the agent is required to make returns of the moneys he collects, and to pay over the same, upon the call or demand of the principal. Each of the agents employed by the plaintiff has a certain territory in which he is to sell and lease sewing machines, and to collect moneys belonging to his employer. Every two or three months, at such times as the principal selects, the agent makes a return of the moneys collected by him, and he receives credit for his commissions and for such sums as he pays in cash. Sometimes he pays in full, and at other times leaves a balance to stand over. The employer does not proceed at once to enforce payment of such balance but leaves the payment to be made later on.

BRISCOE, J., delivered the opinion of the Court.

The appellee brought suit against the appellants as surviving obligors on a bond conditioned for the faithful performance of duty by an agent employed by him. The record in the case presents the questions argued upon this appeal in a very unsatisfactory manner. It contains voluminous pleadings, the bond sued on, and merely an agreement as to few of the facts involved. The case was tried before the Court below without the intervention of a jury. No bill of exceptions was taken to any of the rulings of the Court, and the appeal is from a judgment for the plaintiff. The main question on the appeal is, were the defences relied on properly presented by the pleadings in the case.

The bond sued on was executed October 2nd, 1891, and recites that the plaintiff, Thomas, had employed the principal obligor, John E. Sard, as his agent in selling and leasing sewing machines, in the discretion of Thomas, and in collecting money due upon such sales, &c., and for the discharge of any and all duties connected with said business. It also provides that " upon the first call or demand of said Thomas after he (the agent) has received or collected any money for the use or benefit or belonging to Thomas, he will make a return thereof and pay the same over to him or his order."

The condition of the bond was that the same shall be void if John E. Sard shall well and truly do and perform all his duties connected with said agency, and shall well and faithfully fulfill and perform all his agreements and undertakings in the premises, but otherwise to remain in full force and virtue in law. The breach assigned by the declaration is, that Sard, under the agency, after the date, execution and delivery of the bond, did receive and collect certain moneys for the use and benefit of Thomas, but did not pay over the moneys so received and collected, although demand for such payment was duly made, &c. To the declaration the defendants filed seven pleas. Subsequently the third, fourth and fifth pleas were amended, and the amended pleas will be here considered as taking the place of the pleas first filed because the original pleas bearing the same numbers must be considered as withdrawn. *Mitchell* v. *Williamson*, 9 Gill, 71. We will then consider the pleas in their order. The first alleges that Sard never collected the moneys as alleged ; the second that he paid over the moneys collected by him. Issue was joined on these pleas and there is no contention as to their correctness. The third plea alleges that the plaintiff changed the time and manner of settlement as provided in the bond. And to this plea the plaintiff demurred. Now the bond which is a part of the declaration provided that Sard should pay over the money collected by him, upon the first call or demand

of Thomas. And as under this bond no particular time of settlement was provided for, but the whole matter was left to the discretion of Thomas, the demurrer to this plea was properly sustained. The plea is also defective in not alleging that the sureties were injured by the alleged change in the time and manner of settlement because if the changes were made after a defalcation and after the liabilities of the sureties had become fixed it would be no defence to the action. *McShane* v. *The Howard Bank*, 73 Md. 135.

While a surety is discharged if the contract is materially changed without his consent, yet an agreement between the creditor and the principal obligor which is not a binding contract to extend the time of payment or change the original contract does not operate to discharge a surety. *Schaeffer* v. *Bond*, 72 Md. 501 ; *Smith* v. *State*, 46 Md. 617 ; *Gott* v. *State*, 44 Md. 319. The mere indulgence by a creditor in collecting a debt due him does not discharge a surety of the debtor. *Freaner* v. *Yingling*, 37 Md. 491.

The amended fourth plea sets forth that Thomas had knowledge of the defalcations of Sard, " shortly after the occurrence thereof," but kept Sard in his employment and permitted the defalcations to continue and did not notify the defendants. The demurrer to this plea was properly sustained. Even assuming that the defendants would not be liable for defalcations committed by Sard after knowledge by the plaintiff of his prior defalcations, yet the fact that he was thereafter retained would not discharge the defendants from liability for such prior defalcations. This question was conclusively settled in *McShane* v. *Howard Bank*, 73 Md. 135 Where a plea undertakes to answer the whole declaration, but in fact answers but a part, it is bad upon demurrer. *Willing* v. *Bozman*, 52 Md. 62. Nor would the allegation in the plea that plaintiff did not notify defendants of Sard's defalcations, furnish them with a defence. The mere failure of the creditor to give voluntary information to the surety of the default of the principal cannot have the effect of discharging the surety. *Taylor* v. *State*, 73 Md. 208 ; *Forrester* v. *State*, 46 Md. 154.

The amended fifth and eighth pleas are open to the same objections as the fourth plea. They were stricken out by the Court upon the ground that they were substantially the same as the fourth plea, and need not be further considered here.

We come then to the sixth and seventh pleas. These pleas set forth that at the time of accepting the bond the plaintiff had knowledge of prior misconduct and irregularities on the part of Sard in applying funds collected by him to his own use, that the plaintiff failed to communicate to the sureties this fact but fraudulently concealed and suppressed the same. A demurrer to this plea was overruled and the plaintiff then filed a replication denying every material allegation of the plea. The defendants demurred to the replication, but the demurrer was overruled. We find no error in the action of the Court upon this demurrer. A creditor is not bound in the absence of inquiries from the sureties to communicate to them all the circumstances that may effect their undertaking.

In *Magee* v. *Manhattan Life Ins. Co.*, 92 U. S. 99, the Supreme Court said : " A fraudulent concealment is the suppression of something which the party is bound to disclose. To constitute fraud the intent to deceive must clearly appear. The mere relation of principal and surety does not require the voluntary disclosure of all the material facts in all cases. The same rule as to disclosures does not apply in cases of principal and surety as in cases of insurance on ships or lives." "To render the general allegation of concealment sufficient in a pleading, it is necessary also to aver that the creditor either procured the surety's signature, or was present when the instrument was executed, and then misrepresented or concealed essential facts which should have been disclosed ; otherwise the allegation of fraud is only the pleader's deduction." *Burks* v. *Wonterlien*, 6 Bush. 24.

For these reasons the judgment will be affirmed.

*Judgment affirmed.*

(Decided January 5th, 1897).