CLARK *v.* GERSTLEY.

PRINCIPAL AND SURETY; BONDS; PLEADING AND PRACTICE.

1. The sureties on a bond conditioned on the payment by the principals of the purchase price of goods four months after sale, which contained no provision as to notice, are not discharged by failure to give notice that their principals had not made payment as required, nor by mere delay in enforcing the obligations of the principals.

2. A surety is discharged from liability by any material change, without his knowledge or consent, in a contract for which he has become a surety, whether prejudicial to him or not, or by the entry into a binding contract with his principal for the extension of time of payment. (Following *Walker* v. *Washington Title Ins. Co.* 19 App. D. C. 575.)

3. In order to discharge a surety on a bond conditioned on the payment of money at a certain time, on the ground the credit has been extended beyond the time limited in the bond, the extension of the credit to the principal debtor beyond the time specified must be not only upon a valuable consideration, but for a fixed and definite period.

4. In an action on a bond, a plea of a surety that he has been discharged by the extension of time when payments were to have been made must show that the extension was agreed upon in a way binding upon the principal, for a fixed and definite period; and a plea that the plaintiff extended the time of payment for a valuable consideration, without the surety's knowledge or consent, is insufficient.

No. 1569.  Submitted October 13, 1905.  Decided November 8, 1905.

HEARING on appeal by one of several defendants from a judgment of the Supreme Court of the District of Columbia entered upon demurrer to the defendants' pleas, appellant having elected to stand thereon. *Affirmed.*

The facts are sufficiently stated in opinion.

Mr. *M. J. Keane,* Mr. *Samuel G. Brent,* and Mr. *L. A. Bailey* for the appellant.

Mr. *Simon Wolf,* Mr. *Myer Cohen,* and Mr. *Eugene A. Jones* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The appellant, John W. Clark, was joined as one of the sureties of Monaghan and McGuire, in the general action upon the surety bond, as has been recited in the statement of the appealed case of *McGuire* v. *Gerstley,* No. 1550, *ante,* p. 193. His special pleas were not disposed of at the time with those of his codefendants, but were postponed to April 7, 1905. On that date plaintiff's demurrers were sustained to each of his seven pleas, and judgment for $5,000 entered against him.

His appeal has been prosecuted separately, and was submitted immediately after the other.

The first six pleas are identical with those of his cosurety, William McGuire, and the demurrers thereto were properly sustained for the reasons that have been given in the opinion delivered in No. 1550, *ante,* p. 193.

The only questions for further consideration arise on the demurrer to the seventh plea, which was also sustained.

This plea reads as follows:

"7. And for a further plea this defendant says that he ought not to be charged with the said debt by virtue of the said supposed writing obligatory because, he says: That by the terms of the said writing obligatory the said John F. Monaghan and J.

Charles McGuire agreed to and with the plaintiffs and this defendant that they, the said John F. Monaghan and J. Charles McGuire, would pay to the plaintiffs, for the goods and merchandise purchased from the said plaintiffs, in four months after the date of each respective purchase; yet, notwithstanding said agreement, the said John F. Monaghan and J. Charles McGuire did not pay for the said goods in the said time agreed upon, nor did the plaintiffs require them to pay for the same, but, on the contrary, extended the time of payment, for a valuable consideration, in which the said Monaghan and McGuire had to pay for the said goods and merchandise; that the said plaintiffs never notified this defendant of the failure of the said Monaghan and McGuire to pay for the said goods and merchandise as the same became due and payable under the terms of the said writing obligatory; neither did the plaintiffs notify this defendant that they extended the time of payment of said goods and merchandise beyond the said term of four months, as agreed upon in said writing obligatory; that by reason of the failure of the plaintiffs to notify this defendant that the said Monaghan and McGuire did not pay for the said goods and merchandise in four months from the date of each purchase, and by reason of the extension of credit given to the said Monaghan and McGuire without the knowledge or consent of this defendant, all of which facts became known to this defendant after the filing of this suit, this defendant was wholly relieved and discharged from all liability under and by virtue of said supposed writing obligatory."

1. So much of this plea as claims a discharge of the liability of the sureties for the want of notice by the plaintiffs of the failure of Monaghan and McGuire to make prompt payments upon the expiration of the credit provided for each separate sale is undoubtedly bad. The contract evidenced by the bond contains no requirement that such notice shall be given; and its omission, together with a mere delay in enforcing the obligation of the principals, worked no discharge of the sureties. *Sprigg* v. *Bank of Mt. Pleasant,* 14 Pet. 201, 207, 10 L. ed. 419, 422; *Lake* v. *Thomas,* 84 Md. 608, 623, 36 Atl. 437.

2. The plea also undertakes to set up the defense of discharge

by reason of an agreement with the principals extending the time of payment.

Undoubtedly, the contract of a surety is a strict one, and he has the right to stand upon the very terms of his undertaking. Any material change in the contract for which one has become surety, whether prejudicial to him or not, or the entry into a binding contract with his principal for the extension of the time of payment, without the surety's knowledge and consent, will work the discharge of his liability. *Reese* v. *United States,* 9 Wall. 13, 21, 19 L. ed. 541, 544; *Cross* v. *Allen,* 141 U. S. 528, 537, 35 L. ed. 843, 849, 12 Sup. Ct. Rep. 67; *Coughran* v. *Bigelow,* 164 U. S. 301, 310, 41 L. ed. 442, 447, 17 Sup. Ct. Rep. 117; *Walker* v. *Washington Title Ins. Co.* 19 App. D. C. 575, 588. The extension of credit must not only be upon a valuable consideration, but for a fixed and definite period. 1 Brandt, Suretyship & Guaranty, § 378; *Hayes* v. *Wells,* 34 Md. 512, 515; *Jenkins* v. *Clarkson,* 7 Ohio, 72, 75; *Thompson* v. *Robinson,* 34 Ark. 44, 52; *Woolfolk* v. *Plant,* 46 Ga. 422, 426; *Morgan* v. *Thompson,* 60 Iowa, 280, 283, 14 N. W. 306.

The nature of the unauthorized agreement for an extension of the time of payment must be alleged in the defensive pleas with sufficient certainty to show that it comes within the rule above stated. It has been held that the simple averment that an extension has been made upon a valuable consideration, as in the foregoing plea, is but a statement of a legal conclusion, and is insufficient without the facts showing how the consideration arose. *Winne* v. *Colorado Springs Co.* 3 Colo. 155, 158; *Palmer* v. *White,* 65 N. J. L. 69, 70, 46 Atl. 706.

However this may be as a general rule applicable to all cases, it is well settled that the plea must at least show that the extension of payment has been agreed upon, in a way binding upon the principal, for a fixed and certain period. *Menifee* v. *Clark,* 35 Ind. 304, 306; *Chrisman* v. *Perrin,* 67 Ind. 586, 587; *McCormick Harvesting Mach. Co.* v. *Rae,* 9 N. D. 482, 484, 84 N. W. 346; *Glickauf* v. *Hirschhorn,* 73 Ill. 574, 575; *Prather* v. *Young,* 67 Ind. 480, 482.

Tested by these principles the plea is defective. All that is

averred is that, without the defendant's knowledge and consent, the plaintiffs "extended the time of payment for a valuable consideration."

For these reasons the court did not err in sustaining the demurrer to this plea also, and the judgment will be affirmed, with costs.                                         *Affirmed.*

A writ of error to the Supreme Court of the United States was allowed December 6, 1905.