**ELLER et al. v. ERWIN.** (No. 9143.)*

(Court of Civil Appeals of Texas. Dallas. June 21, 1924. Rehearing Denied Oct. 18, 1924.)

**1. Indemnity ⊜9(2)—Particular matters held included in "loss through indorsement."**

Contract indemnity, to protect E. against loss "for such amounts that" he "may lose through indorsement of" note, includes any and all money paid out by him on account of, and made reasonably necessary by, his indorsement, as attorney's fees and other expenses in resisting liability, as was his duty, in action on the note.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Loss.]

**2. Indemnity ⊜12 — Indemnitors of indorser not released by extension of time of payment of note without their knowledge.**

Indemnitors of indorser of note against loss through indorsement are not released by extension of time of payment without their knowledge.

**3. Limitation of actions ⊜56(2)—Limitations against action on indemnity of indorser held to run from determination of total loss.**

Contract of indemnity of indorser against loss for such amounts as he may lose through indorsement of note is a continuing contract, not intended to be resorted to piecemeal, so that statute begins to run only when amount of indemnitee's total loss has been determined.

**4. Estoppel ⊜68(2) — Indorser, indemnified against loss, held not estopped to sue indemnitors by defenses as indorser of note.**

No defenses urged by indorser of note, in action thereon by payee against him and maker, estop him to sue on contract indemnifying him against loss by reason of indorsement.

**5. Indemnity ⊜12—Indemnitors against loss to indorser held not discharged by judgment for indorser.**

Indemnitors of indorser of note against loss through indorsement are not discharged from liability on indemnity contract by judgment in action on note, on its face appearing to be a discharge of indorser from liability through judicial ascertainment; this being only the carrying out of a compromise agreement.

Appeal from District Court, Collin County; F E. Wilcox, Judge.

Action by J. C. Erwin against R. C. Eller and others. Judgment for plaintiff, and defendants bring error. Affirmed.

J. L. Zumwalt, of Dallas, for plaintiffs in error.

John Doyle, of McKinney, for defendant in error.

VAUGHAN, J. This suit was instituted in the trial court by defendant in error on the 9th day of February, 1922, to recover the sum of $1,285, together with interest and attorney's fees on said sum, the suit being based upon two promissory notes executed by plaintiffs in error to defendant in error on the 24th day of April, 1909, each in the sum of $2,500, payable, respectively, one and two years after date, to defendant in error, or order, with interest at the rate of 10 per cent. per annum and 10 per cent. attorney's fees, each containing the following clause:

" * * * But this will not become payable or negotiable, except for such amounts that J. C. Erwin may lose through indorsement of R. C. Eller note to C. C. Slaughter."

Defendant in error, in part, substantially alleged that on or about the 24th day of April, 1909, at the request of plaintiffs in error, he became surety, guarantor, and indorser on a certain note for the principal sum of $5,000, executed by one R. C. Eller, one of the plaintiffs in error, to one C. C. Slaughter; that before defendant in error signed said note the plaintiffs in error agreed to indemnify him and hold him harmless as to such sum, or sums, as he might lose by reason of signing said note to Slaughter, said indemnity not to exceed $5,000, and to evidence same the plaintiffs in error executed the said two notes in the sum of $2,500 each; that said $5,000 note was not paid at maturity, but was renewed at the request of plaintiffs in error, with accrued interest added; that said renewal note was not paid by said R. C. Eller at maturity, whereupon

suit was instituted thereon by C. C. Slaughter Company, the then owner of said note, against said Eller and defendant in error for the amount of said note, interest, and attorney's fees, and cost of suit; that on account of said Eller failing to pay said note and the filing of said suit thereon, defendant in error, in order to protect himself, as well as plaintiffs in error, as far as possible, employed attorneys to represent him in resisting the demands of plaintiff in said suit, and had to expend, and did expend, on account thereof, the sum of $1,284.81, viz. attorneys' fees in the sum of $500, expenses incurred in conducting the defense of said litigation, $137.82, and the sum of $647.90 paid C. C. Slaughter Company, plaintiff in said suit, in full satisfaction and payment of the claim asserted against defendant in error on account of the note sued on by said C. C. Slaughter Company; that all such payments and expenditures were reasonable, necessary, and proper.

Plaintiffs in error presented their defense by way of (a) general exception; (b) special exceptions to section 4, alleging the renewal of the Slaughter note, and that on account thereof they were discharged from liability on the note to defendant in error, to the allegation with reference to the employment of attorneys by defendant in error in the suit by C. C. Slaughter Company against defendant in error, and R. C. Eller, to said petition because it showed that all matters in controversy were litigated between the defendant in error and the plaintiff in error R. C. Eller, and that the plaintiffs in error, J. J. Eller and H. P. Eller, were secondarily liable, and because said petition did not show the nature of the suit of Slaughter Company against the defendant in error, nor allege that any recovery was had by Slaughter Company against defendant in error, and, further, because said petition showed that the cause of action asserted by defendant in error against plaintiffs in error was barred by the statute of limitation; (c) general denial; (d) statute of limitation; (e) that plaintiffs in error, H. P. and J. J. Eller, were discharged from liability upon the notes because defendant in error and R. C. Eller, one of the plaintiffs in error, without the knowledge and consent of said H. P. and J. J. Eller, renewed and extended the time of payment of said note by the execution of a new note; (f) plea of estoppel and other defenses not necessary to be here specifically noted, but which will be reflected in this opinion.

On the 3d day of March, 1923, a trial was had before the court without the intervention of a jury, which resulted in a judgment in favor of defendant in error against plaintiffs in error for the sum of $1,821, from which this appeal by writ of error is prosecuted, in support of which plaintiffs in error present 22 assignments of error, challenging the correctness of the proceedings leading up to and including the rendition of said judgment. The following material facts were established:

On April 24, 1909, R. C. Eller was in the automobile business in Dallas, Tex., and applied to C. C. Slaughter for a loan, the money to be used in his business. He succeeded in arranging such loan by procuring defendant in error and one Rabb to go on note executed by him for the sum of $5,000, payable to C. C. Slaughter. Before defendant in error signed said note, said R. C. Eller and his two brothers, H. P. and J. J. Eller, contracted to indemnify him against liability or loss on account of signing said note. This was accomplished by the execution and delivery by plaintiffs in error to defendant in error of the two obligations sued on in this case. When the note of C. C. Slaughter became due, R. C. Eller was unable to pay it, and on September 1, 1910, the same parties, in renewal of said note, executed a note for the sum of $5,676.39, payable to C. C. Slaughter, which note was by Slaughter indorsed and transferred to C. C. Slaughter Company. This note of renewal was not paid by R. C. Eller at maturity. C. C. Slaughter Company indulged the parties liable thereon by forbearing for several months to bring suit at the earnest request of R. C. Eller. Failing to obtain settlement of the note with the indulgence thus extended, Slaughter Company filed suit thereon. The Ellers made no defense. Defendant in error employed counsel to represent him, and Rabb, the other surety, employed other counsel to represent his interest therein. The case was tried, and judgment rendered in favor of Erwin and Rabb, the sureties on said note, and in favor of the plaintiff against R. C. Eller. From this judgment Slaughter Company, plaintiff in said suit, prosecuted an appeal, which resulted in said judgment being reversed and the cause remanded. See C. C. Slaughter Co. v. Eller et al. (Tex. Civ. App.) 196 S. W. 704.

R. C. Eller, the principal in said note, was hopelessly insolvent, which fact was known to defendant in error, as well as his attorneys, and, acting on their advice, secured a compromise by which defendant in error, on the payment of $647.90, was released from further liability on said note. At the consummation of the compromise, attorneys for defendant in error paid all the costs and expenses chargeable to him, and charged same to defendant in error, which expense, with the fee paid said attorneys of $500, and the sum paid Slaughter Company, $647.90, amounted to the sum of $1,285. This compromise agreement and settlement was made in February, 1920, and in March, 1920, defendant in error made the final payment to his attorneys, which included the $647.90

paid to Slaughter Company. On the 29th day of February, 1922, defendant in error filed his suit in the trial court on said indemnity obligation to recover the amounts paid out by him by reason of said Slaughter note. The principal amount of $1,282.25 sued for comprised the following: $101 paid out on and between the dates from July 6 to November 28, 1914; $19.02 paid out on and between the dates from February 1 to December 2, 1915; $10.62 paid out on and between the dates from January 1 to February 1, 1916; $51.83 paid out on and between the dates from February 8 to August 15, 1917; $46.22 paid out July 19, 1918; $10.71 paid out on and between the dates from January 5 to January 6, 1919; $953.65 paid out on and between the dates from March 6 to March 15, 1920; $647.90 of said principal sum representing the amount paid Slaughter Company in settlement of said litigation, in so far as defendant in error was concerned, the $500 fee paid by him to his attorneys and $134.35 necessary miscellaneous expense incurred by defendant in error in making his defense.

On the 10th day of March, 1920, final judgment was rendered in the suit of C. C. Slaughter Company against R. C. Eller et al. on said renewal note in favor of plaintiff therein for $9,802.88, and in favor of J. R. Rabb and defendant in error, discharging them from any liability on said note; that the discharge of said defendant in error from liability was due to said compromise settlement theretofore made by him, releasing him from further liability on said note.

Of the amount sued for, defendant in error paid personally $500, being the attorney's fees. The remainder was paid by his attorneys from time to time, as the occasion arose, during the prosecution of his defense to said suit, which aggregated $782.25, which amount so paid by his attorneys was repaid to them by defendant in error; the last payment made by him being at the conclusion of the settlement, to wit, on the 6th day of April, 1920.

We shall not attempt to discuss the assignments of error seriatum, or in the order as presented by plaintiffs in error, as a general discussion of the questions thus presented will suffice, both to develop and dispose of the contentions made by same.

[1] The court did not err in overruling the exceptions addressed to the pleadings of defendant in error. By the contract of indemnity declared on, plaintiffs in error, as indemnitors, contracted to protect defendant in error, as indemnitee, against loss "for such amounts that J. C. Erwin may lose through indorsement of R. C. Eller note to C. C. Slaughter." This language is very comprehensive and includes any and all sums of money paid out by defendant in error on account of, and made reasonably necessary by, his indorsement of said note, and, as it was

the duty of defendant in error to present every available defense to the suit brought by Slaughter Company, the employment of counsel by him was both a reasonable and necessary service, and the expense incurred by way of attorney's fees to represent him in said litigation, as well as expense incurred in preparing the defenses to be urged thereto, was a loss against which plaintiffs in error indemnified defendant in error.

Plaintiffs in error would have been discharged from liability, if defendant in error, on being sued upon the principal obligation against which he was indemnified by plaintiffs in error, had failed to set up every defense which would probably have been successful in defeating liability on said principal obligation. McKinley v. Davidson (Tex. Civ. App.) 146 S. W. 576; Thurber v. Corbin, 51 Barb. (N. Y.) 215; Lothrop v. Blake, 3 Pa. 483. A discharge of this duty by defendant in error to plaintiffs in error necessarily required the employment of attorneys at law to represent him in the litigation, and made necessary the payment by him to attorneys so employed of reasonable compensation for services rendered. However, the right to recover attorney's fees, and other costs necessarily and reasonably incurred in resisting the suit on the principal obligation, did not rest alone upon the duty of indemnitee to resist liability thereon, as the language of the contract of indemnity, not being restricted to any particular sum, was sufficient to embrace within its terms the obligation to indemnify defendant in error against loss incurred by his indorsement of said principal obligation through the payment of attorney's fees and other expenses incurred in resisting liability in the suit brought thereon. Cameron et al. v. Barcus et al., 31 Tex. Civ. App. 46, 71 S. W. 423; Buffington et al. v. Bronson, 61 Ohio St. 231, 56 N. E. 762.

[2] The extension of time for payment or performance of the principal obligation, as complained of by plaintiffs in error, did not release them as indemnitors against loss from liability on the contract of indemnity declared on. As well said in the case of German American State Bank v. Bear, 111 Kan. 193, 206 P. 902, the indemnity contract is an original undertaking on the part of the indemnitor to protect the indemnitee against loss. The indemnitor's obligation is found in the contract signed by him, and not in the principal obligation. If the maker of the principal obligation fails to pay it, it becomes the measure of the indemnitor's loss and fixes the extent of the indemnitor's liability. The extension of time for the payment of the principal obligation does not alter the terms of the indemnity contract, and does not change the liability of the indemnitor thereunder. To the same effect is the holding in the case of Buffington v. Bronson, supra.

[3] The cause of action as alleged by the

pleadings of defendant in error was not subject to the exception presenting the statute of limitation thereto. The contract of indemnity was a continuing obligation, not intended to be resorted to by the parties by piecemeal, in order to preserve the object for which it was executed, to wit, the protection of defendant in error from loss, by reason of having indorsed R. C. Eller's note to C. C. Slaughter. This liability could not be definitely ascertained until the amount of the total loss sustained by defendant in error on account of indorsing said note had been determined. The very terms of the contract of indemnity preclude the idea that it was the intention of the parties that, on the payment of any sum by defendant in error, there should accrue, on such date, a cause of action to enforce the payment of such sum, against which the statute of limitation would then be put in motion. This was one transaction, and was not intended by the parties that a cause of action should accrue on account of same until the contract of indemnity had ceased to be of service between the parties, in that the end of the liability on the part of the indemnitors had been reached so as to give rise to a cause of action through which full relief or settlement of all controversies between the parties could be had.

The items comprising the demand of defendant in error constituted one account, representing the full measure of liability of plaintiffs in error on the contract of indemnity. This doctrine is ably presented and maintained by the Court of Civil Appeals of Missouri, in the case of Roberts v. Neale, 134 Mo. App. 614, 114 S. W. 1121, from which we quote the following:

"Where it is fairly inferable from the conduct of the parties, while the account is accruing, that it is to be taken as one, it will be so regarded by the courts. * * * And the question whether it is so inferable is one for the jury. * * * In this case the evidence clearly shows that the payments were made at different times, in relation to the one thing—the note—and that they were necessarily regarded by the parties as making one aggregate or single amount, viz., a sum sufficient to discharge the note, and the jury, under proper instructions, has so found. * * * Suppose that these payments were on one transaction, and were made so that some of them were older than the period of limitations and others within the period, would not the aggregate constitute a single demand? And as each successive payment was made, would it not be merely enlarging the single demand, until the last one, within the period of limitation, would make the total of a single claim the subject of a single action? It has been so decided. Kearns v. Heitman, 104 N. C. 332, 10 S. E. 467."

This doctrine was recognized and its principle applied in the case of Mateer v. Cockrill et al., 18 Tex. Civ. App. 391, 45 S. W. 751, as indicated by the following language used in the opinion:

"We think it was not in contemplation of the parties who gave this guaranty that so soon as any one of them might advance money, or assume a personal liability, however small the amount, in furtherance of their common purpose, and such sum so advanced or liability assumed was in excess of what he had subscribed, such guarantor would have a cause of action against each of his coguarantors, but that the understanding of the guarantors was that when the subscriptions were all collected and paid out, and the road was obtained, and the railway company settled with, then, and not till then, there should be an adjustment of equities between them."

[4] It is contended by plaintiffs in error that, by reason of the several defenses urged by defendant in error to the suit instituted on the original obligation by Slaughter Company, he was estopped from maintaining the suit on the contract of indemnity. The defenses presented were not alone in behalf of defendant in error, but were as much for the protection and service of plaintiffs in error. Such defenses so presented did not alter in any respect or change the relationship existing between plaintiffs in error and defendant in error, nor did same cause plaintiffs in error to alter or change their position, whereby it would be inequitable to permit defendant in error to recover on the indemnity contract made by them. The result of the defenses urged contributed to bring about a most favorable settlement, whereby the liability of plaintiffs in error on the contract of indemnity was reduced from $5,000 to the amount of the judgment, which they so vigorously assail as inequitable and unjust, being practically one-third of the amount of liability fixed at the time default was made in the payment of the original obligation, whereby they were relieved from liability upon more favorable terms, that the requirements of the contract of indemnity would have brought about. Croft v. Peck, 64 Tex. 627. For, as said in the case of German American State Bank v. Bear, supra, if the maker of the principal obligation fails to pay it, it becomes the measure of the indemnitee's loss, and fixes the extent of the indemnitor's liability. This, of course, where the indemnitee discharges the principal obligation; there being no defense to be made whereby liability could be avoided, or such defense would probably have been successful.

[5] While the final judgment rendered on the principal obligation on its face appears to be a discharge of defendant in error from liability, perforce of judicial ascertainment of the rights of the parties by the court, yet, as disclosed by the record, this immunity was obtained by compromise settlement, whereby defendant in error was released from any further liability on account of the principal obligation. Therefore, the judgment thus rendered was only carrying out and perpetuating, as a matter of record, the

effect of the agreement theretofore entered into by defendant in error with the plaintiff in said suit, whereby defendant in error, for a valuable consideration paid by him to said plaintiff, was released from further liability on account of said obligation. This inured to the benefit of plaintiffs in error, for, if the settlement had not been made by defendant in error, and the judgment rendered against R. C. Eller for $9,575 had also been against defendant in error, then the measure of liability of plaintiffs in error would have been the sum of $5,000, plus attorney's fees and interest thereon, as per the terms of said indemnity contract, or such an amount of the aggregate of such sums as would have been necessary to have indemnified defendant in error from loss. Therefore plaintiffs in error were not discharged from liability on account of said indemnity contract by the rendition of said final judgment.

By these observations, the 22 assignments of error and propositions thereunder presented by plaintiffs in error are comprehended and determined adversely to them, which leads to an affirmance of the cause, and it is so ordered.

Affirmed.