Mercer County Circuit Court.

THE TRENTON BANKING COMPANY, PLAINTIFF, v.
CHARLES B. KENNEDY, DEFENDANT.

Decided August 23, 1939.

For the plaintiff, *Katzenbach, Gildea & Rudner.*

For the defendant, *Ellis L. Pierson.*

Oliphant, C. C. J.   The plaintiff was the holder of numerous notes endorsed by Kennedy & Pidcock, Inc., and discounted by the said corporation in the plaintiff bank. Defendant had been an officer and stockholder in Kennedy & Pidcock, Inc.   Of the notes so held by the plaintiff was one made by Edmund M. Allen and Marion F. Allen in the sum of $2,650.   On December 10th, 1928, the defendant signed and delivered to the plaintiff an agreement wherein he "assumed liability for any loss to your bank upon same [referring to numerous notes including the Allen note] until these notes are liquidated.   Of course, any liability for loss would first fall upon Kennedy & Pidcock, Inc., and I would not be expected to reimburse your bank for any loss until default should be made in the payment of such loss by Kennedy & Pidcock, Inc."

The Allen note was secured by a mortgage made by them to Kennedy & Pidcock, Inc., but not by it assigned to the bank.

After the making by the defendant of the agreement on December 10th, 1928, plaintiff accepted many renewals of

the Allen note, some being made with small payments on the principal, others with interest alone being paid. The last note was dated December 30th, 1932, in the sum of $2,365, payable one month after date. It was not paid when it became due. Such non-payment was brought to the attention of the defendant. In June, 1933, plaintiff notified defendant it had placed the claim in the hands of an attorney for collection with instructions to sue.

Suit was instituted July 14th, 1938, upon the note against the Allens and Kennedy & Pidcock, Inc. Judgment was entered thereon, execution issued and a levy made upon the right, title and interest of Kennedy & Pidcock, Inc., in the mortgage made by the Allens to that corporation as security for their note. The right, title and interest of Kennedy & Pidcock, Inc., in and to the mortgage and the interest of the Allens in the property covered thereby was sold by the sheriff on March 22d, 1939, for $100. The deficiency and loss to the plaintiff in the transaction was $3,301.48.

This suit is to recover that amount by virtue of defendant's agreement of December 10th, 1928.

Defendant, by way of answer, sets up four separate defenses; that the agreement was without consideration and the terms and conditions thereof were not fulfilled; that plaintiff was not diligent in not realizing upon the mortgage security and in proceeding against the makers and endorsers of the note to ascertain the loss, if any, covered by the agreement; that the cause of action is barred by the statute of limitations and that the defendant was relieved from the obligation to make good the loss claimed by reason of plaintiff accepting renewals of the Allen note.

The matter comes before me on a motion by the plaintiff to strike the answer and the separate defenses on the ground that it is sham and is insufficient in law and does not set forth facts sufficient to disclose a legal defense.

The agreement is a contract of indemnity wherein defendant indemnified plaintiff against any loss by reason of the discounting by them of the Allen note. It is a conditional continuing guaranty to save the plaintiff harmless for any loss occasioned to it by reason of it having discounted the

note. There was ample consideration for it. A reading of the agreement will disclose that benefits accrued to the defendant thereunder. *The Coast National Bank* v. *Bloom,* 113 *N. J. L.* 597; 174 *Atl. Rep.* 576. The terms of the agreement were fulfilled by the bank. Defendant agreed to assume and pay any loss arising out of the note and plaintiff had the legal right to renew the note from time to time on whatever terms it chose. The second paragraph of the agreement is mere recital and the expression of a hope which does not change the legal effect of the last two paragraphs. The word "liquidate" has several meanings, among them "settled, paid, discharged." *Canda* v. *Canda,* 92 *N. J. Eq.* (at *p.* 426); 112 *Atl. Rep.* 727; *Wilson* v. *Stillwell,* 75 *Am. Dec.* 477; *Black's Law Dict.* Undoubtedly, in the sense used here, the indemnitor meant paid. This being so, the defendant assumed the liability for loss until the note was paid in full, which in itself, contemplated renewals. The suit is not on the note but on the contract. Renewals of the note did not discharge the indemnitor. *Eller* v. *Erwin,* 265 *S. W. Rep.* 595; 206 *Pac. Rep.* 902; *Weger* v. *Robinson Nash Motor Co.,* 172 *N. E. Rep.* (at *p.* 11).

As to the second separate defense, lack of diligence on the part of the plaintiff, it will be noted that the note became due and unpaid on January 30th, 1933. Soon thereafter, plaintiff notified defendant it was placing the collection thereof in the hands of attorneys. Nothing was done, no steps were taken to establish the loss until July 14th, 1938, when suit was begun, a period of over five years. Of course, plaintiff was not compelled to foreclose on the mortgage security, but it elected to do so. The loss was established March 22d, 1939. It is this delay that the defendant complains of. He says that from the time of the default to the time action was first begun against the makers and endorsers of the note, the value of the security shrank from that equal to or in excess of the note indebtedness, to a much less sum. He says this delay constituted lack of diligence, negligence, on the part of the plaintiff and that therefore he is relieved of payment. Of course, if this agreement was an absolute guarantee of payment, this would be no defense, but it is not.

As heretofore stated, it is an indemnity contract or a guarantee of collection.

Mr. Justice Heher in *Westville Land Co.* v. *Handle,* 112 *N. J. L.* 447; 171 *Atl. Rep.* 520, said: "The contract partakes of the nature of a guaranty of collection, no liability being incurred until after, *by the use of due and reasonable diligence,* the guarantee has become unable to collect the debt from the principal debtor," citing *Burton* v. *Dewey,* 4 *Kan. App.* 589; 46 *Pac. Rep.* 325. See, also, *Rospond* v. *Decker,* 162 *Atl. Rep.* 725 (at *p.* 727). In *Wolthousen* v. *Trimpert,* 105 *Atl. Rep.* 687 (at *p.* 690); 93 *Conn.* 260, it was held: "The duty of the indemnitee in a contract to bear the loss the indemnitee may suffer on an account held by him against a third party is, unless otherwise provided, to act in good faith and to use ordinary care, or, to put it the other way, not to be negligent in respect to the loss for which indemnity is claimed." Also citing *Burton* v. *Dewey, supra.* See *Columbia Casualty Co.* v. *Timba,* 63 *Fed. Rep.* (2d) 538. From the foregoing it is apparent that this is a proper and legal defense.

The statute of limitations is not available as a defense because the cause of action did not arise or accure until the loss was established. There was no loss, no damage had accrued, until March 22d, 1939.

The fourth separate defense is disposed of by my conclusion in regard to the first separate defense.

The answer fails to disclose legal defenses and will be struck out. The first separate defense is in part sham and in part insufficient in law and discloses no legal defense. It will be stricken out.

The motion to strike will be denied as to the second separate defense.

The third and fourth separate defenses do not set forth sufficient facts to disclose legal defenses and are insufficient in law. They will be stricken out.

An order may be presented in conformity with this memorandum. No costs will be allowed.