**Nathan GREENE, Appellant,**

v.

**Harold KAUFMAN, Appellee.**

No. 10825.

District of Columbia Court of Appeals.

Argued Jan. 5, 1977.

Decided Dec. 20, 1977.

Philip H. Manning, Columbia, Md., for appellant.

Kenneth F. Yates, Princeton, N. J., for appellee.

Before NEBEKER, YEAGLEY and MACK, Associate Judges.

PER CURIAM.

In this action, Harold Kaufman sued Nathan Greene for money allegedly due by reason of an indemnification contract. The trial court found in favor of Kaufman, and Greene appealed, claiming that the trial court erred in its construction of the contract. We find no error and accordingly affirm.

I.

The relevant facts of the case are not in dispute. Appellant's wife, Marcia Greene, desired to enter business in the District of Columbia. Toward that end, appellee, who employed Marcia Greene as his housekeeper, decided to assist Mrs. Greene in obtaining a loan from the National Capital Bank of Washington in the principal sum of $5,000. In order to make it possible for

Mrs. Greene to obtain that loan, appellee determined to cosign it. In advance of so doing, however, appellee sought and obtained from appellant and a third person a written indemnification contract. This contract was dated November 18, 1970, and executed by both the appellant and the third person. It provided, in relevant part, as follows:

### CONTRACT OF INDEMNITY

WE, the undersigned, for and in consideration of Dr. Harold Kaufman co-signing and extending his credit for a Five-thousand ($5,000.00) dollar bank loan at National Capital Bank of Washington, D.C. to Marcia Greene daughter of Rose W. Litman, the undersigned and the Wife of Nathan M. Greene, the undersigned, such that the afore-mentioned Marcia Greene will thereby be availed of an opportunity to enter into a retail clothing business at 1729 20th Street, N.W., Washington, D.C.

NOW THEREFORE, we the undersigned hereby agree that we will indemnify and reimburse Dr. Harold Kaufman to thereby save and hold him harmless against any and all loss, damages, costs and expenses, including attorney's fees, incident to or resulting from any noncompliance or default in repayment of the afore-mentioned bank loan by Marcia Greene, as well as any loss or damage which may be caused by reason of the extension and subsequent default of the afore-mentioned bank loan.

On November 19, 1970, Mrs. Greene, with appellee as comaker, signed a promissory note and received a loan from the National Capital Bank of Washington in the sum of $5,000 plus $251.08 for service and interest, repayable in twelve monthly installments. A few payments were made on this note, but soon there was a default. Consequently, a new note was executed by Mrs. Greene and appellee in the sum of $4,262.34 plus $413.44 for service and interest, payable in twenty-four monthly installments. The bank then cancelled the November note. Appellant was unaware of the execution of the new note and the cancellation of the old one. There was a default in the payment of the second note as well, and appellee as comaker was obliged to spend $4,675.78 to discharge the loan.

Having cancelled the loan, appellee sought reimbursement from appellant Greene under the contract of indemnity. Appellant, however, refused to pay, arguing that the execution of the second note discharged his obligation to reimburse.

### II.

It has been said that any modification of the terms of the underlying debt, including an extension of the time for repayment, will discharge an uncompensated surety's obligation to reimburse. *Chapman v. Hoage,* 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370 (1936); *Clark v. Gerstley,* 26 App.D.C. 205 (1905), *aff'd,* 204 U.S. 504, 27 S.Ct. 337, 51 L.Ed. 589 (1907); *White v. Brown,* 110 U.S.App.D.C. 232, 235–36, 292 F.2d 725, 728–29 (1961); 10 Williston on Contracts §§ 1222, 1239 (3d ed. 1967); 72 C.J.S. *Principal and Surety* § 162 (1951). It has likewise been said that the modification of the terms of the underlying debt, including an extension of time, will not discharge an indemnitor's obligation to reimburse. Annot., 43 A.L.R. 1368 (1926); 42 C.J.S. *Indemnity* § 40 at 636–37 (1944). The true distinction between the cases, however, seems to turn on the courts' interpretation of the contracts of surety and indemnity. For, whatever the relationship be called, the obligation to reimburse will always be governed in the first instance by the terms of the parties' agreement. Restatement, *Law of Security,* § 82, comment g at 232 (1941); Annot., 117 A.L.R. 964 (1938).

We agree with the trial court that the language of the contract in this case was broad enough to cover the transaction for which appellee Kaufman sought reimbursement. *See German-American State Bank v. Bear,* 111 Kan. 193, 206 P. 902 (1922); *Eller v. Erwin,* 265 S.W. 595 (Tex.Civ.App. 1924); *Trenton Banking Co. v. Kennedy,* 17 N.J.Misc. 222, 8 A.2d 232 (1939). Under the contract, appellant Greene agreed to hold appellee harmless against "all loss, dam-

ages, costs, and expenses . . . *incident to or resulting from . . . default in repayment of the afore-mentioned bank loan* by Marcia Greene, as well as any loss or damage which may be caused by reason of the extension and subsequent default of the afore-mentioned bank loan." (Emphasis added.)

We may assume, for the purposes of this decision, that the refinancing agreement of February 19 resulted in a "new" loan of $4,262.34, and that this new loan did not constitute a mere "extension" of the November loan of $5,000 referred to in the contract of indemnification. Nevertheless,

we think the conclusion is unavoidable that appellee Kaufman's liability under the refinancing agreement of February and the loss he incurred by reason of that liability, ultimately "resulted from" Mrs. Greene's original default on the $5,000 November loan.*

*Affirmed.*

---

* Appellant also complains that Judge Hamilton, who ultimately decided this case, erred by not conducting a hearing in "open court" as required by Super.Ct.Civ.R. 77(b). Appellee, on the other hand, argues that Rule 77(b) is not applicable, as another Judge had previously held a trial on the merits in open court. We need not decide whether Judge Hamilton erred in completing the proceedings here in chambers rather than in open court, for even if there was error it would serve no purpose to remand the case, as the facts are undisputed.